NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| W.D. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Watchung Hills Regional High School<br>Board of Education,<br><br>Defendant. | Civ. No. 13-3423<br><br>Opinion |

THOMPSON, U.S.D.J.

This matter comes before the Court on the motion for summary judgment brought by Watchung Hills Regional High School Board of Education, (Doc. No. 9), and the motion for summary judgment brought by Plaintiffs W.C.D. and W.D., (Doc. No. 11). The Court has issued the Opinion below based upon the written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, the Court will grant Defendant's motion, deny Plaintiffs' motion, and enter judgment in Defendant's favor.

BACKGROUND

W.C.D. is a classified student diagnosed with certain learning disabilities and disorders, including Dyslexia and Attention Deficit Hyperactivity Disorder, that make it necessary for him to have an Individualized Education Plan, (hereinafter, "IEP"). (Doc. No. 11 at 5). On March 28, 2012, members of W.C.D.'s "transition IEP team," a group that included school officials, met to review and revise W.C.D.'s IEP. (Doc. No. 1 at 4).

During this meeting, W.D., W.C.D.'s guardian, expressed concern regarding the IEP. (Doc. No. 11 at 5).

In June 2012, a specialist evaluated W.C.D. and determined that W.C.D.'s disabilities were not being adequately addressed at his current school. (Doc. No. 1 at 8). On July 10, 2012, W.D. submitted W.C.D.'s application to "The Forman School" where W.D. believed the child's needs would be better addressed. (Doc. No. 11 at 2). On August 7, 2012, W.C.D. was accepted to The Forman School. (Doc. No. 1 at 7). On August 13, 2012, W.C.D. paid the tuition for The Forman School and signed an enrollment agreement. (Doc. No. 1 at 7). On August 24, 2012, Plaintiffs sent a letter notifying Defendant of the events. (Doc. No. 11 at 2, 3).

In response to the letter, the IEP team met on September 7, 2012. During the meeting, Defendant suggested adding a "Developmental Reading Program" to the IEP and provided general information about the program. (Doc. No. 1 at 8). Even though W.C.D. was already enrolled in The Forman School, Plaintiffs requested more specific information about the public school teachers' qualifications and the types of methodologies to be employed in this program. (Doc. No. 1 at 8). However, members of the IEP team only stated that the program would be "research-based," focused on "phonic skills" and comprehension, and taught by a "certified teacher." (Doc. No. 1 at 8). At a hearing before the Office of Administrative Law, Plaintiffs claimed a violation of procedural rights and a denial of a "free appropriate public education," ("FAPE"), because Defendant never shared all information regarding the reading program. Plaintiffs also requested reimbursement for enrolling W.C.D. in the private school.

The Administrative Law Judge dismissed Plaintiffs' claims for reimbursement on the grounds that the notice letter was untimely and dismissed the procedural violation claim on the grounds that Plaintiffs did not have a right to the requested information. (Doc. No. 1 at 10).  Plaintiffs have filed the present action appealing the administrative decision.

DISCUSSION

The present matter implicates two general issues: (1) reimbursement for private placement; and (2) procedural violations under the Individuals With Disabilities Education Act, (hereinafter, "IDEA").  The Court will first examine the applicable standard of review before dealing with each issue in turn.

### 1. Standard of Review

When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as "modified de novo" review.  *See P.P. v. West Chester Area Sch. Dist.,* 585 F.3d 727, 734 (3d Cir. 2009) (citations omitted).  Under this standard, a district court must give "due weight" and deference to the findings in the administrative proceedings.  *Id.* (citations omitted).  "'Factual findings from the administrative proceedings are to be considered prima facie correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'"  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (citations omitted).  The "due weight" obligation prevents district courts from imposing their own view of preferable educational methods on the states.  *Oberti v. Bd. of Educ.,* 995 F.2d 1204, 1219 (3d Cir. 1993) (citations omitted).

2.   *Reimbursement*

 "Parents who believe that a public school is not providing a FAPE may unilaterally remove their disabled child from that school, place him or her in another school, and seek tuition for the cost of the alternate placement." *Mary T. v. Sch. Dist. Of Philadelphia*, 575 F.3d 235, 242 (3d Cir. 2009)(citations omitted).  However, those "who unilaterally change their child's placement [. . .] without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. Of Mass.*, 471 U.S. 359, 373-74 (1985).

"Parents are entitled to tuition reimbursement under the IDEA for unilaterally changing their child's placement to a private school if the following three elements are proven: (1) the District failed to offer the student a FAPE; (2) the private placement is appropriate; and (3) equitable considerations favor reimbursement." *Lauren G. ex. Rel. Scott G. v. W. Chester Area Sch. Dist.*, 906 F. Supp. 2d 375, 390 (E.D. Pa. 2012) (citations omitted).  Even where a district is found to have violated IDEA and placement is appropriate, courts retain the discretion to deny or reduce the amount of the reimbursement "if the equities so warrant – for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009).

Reimbursement may be "reduced or denied" if the any of the following are true: (1) the parents did not inform the district at the most recent IEP meeting that they were removing the child; (2) the parents failed to provide written notice to the district at least 10 business days prior to removal of their intent to unilaterally remove the student and

4

seek reimbursement; (3) the district proposed a reevaluation prior to the removal and the parents did not make the student available for reevaluation; or (4) a judicial body finds the parental actions unreasonable.  20 U.S.C. § 1412(a)(10)(C)(iii).

Here, the Office of Administrative Law granted Defendant's motion for summary decision after finding that Plaintiffs did not follow the notice requirements set out under the IDEA and the applicable state and federal regulations.  The Court cannot disagree with this interpretation.   Plaintiffs did not seek permission to remove W.C.D. and did not notify Defendant of their intent to remove until after W.C.D. had been enrolled in the private school.  Thus, Plaintiffs failed to follow the notice requirements, including the 10-day written notice requirement.

Having found that Plaintiffs failed to comply with the notice requirements, the Court examines whether reimbursement should be reduced or denied.  Courts have denied reimbursement when parents failed to satisfy "their obligation to cooperate and assist in the formulation of an IEP, and [. . .] to timely notify the District of their intent to seek private school reimbursement."  *See C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 (3d. Cir. 2010) ("The IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations."); *see also Patricia P. v. Bd. of Educ. of Oak Park*, 203 F.3d 462, 469 (7th Cir. 2000) (Courts "look harshly upon any party's failure to reasonably cooperate with another's diligent execution of their rights and obligations under IDEA.").

This case is analogous to the decision in *Cape Henlopen*, where the court denied reimbursement when the parents notified the District only after unilaterally placing the child in private school.  *Cape Henlopen*, 606 F.3d at 63-64.  Similarly, by unilaterally

withdrawing W.C.D. and enrolling him in a private school without prior notice, Plaintiffs "disregarded their obligation to cooperate and assist in the formulation of an IEP, and failed to timely notify [Defendant] of their intent to seek private school tuition reimbursement." *See id.*  Accordingly, the Court cannot disagree with the administrative finding that reimbursement is inappropriate.  *See also Forest Grove Sch. Dist.*, 557 U.S. at 247.

       *3.  Procedural Rights*

Plaintiffs allege that Defendant violated certain procedural rights by refusing to disclose methodologies and staff qualifications concerning the Developmental Reading Program.  In order to obtain relief on this claim, Plaintiffs must show two things: (1) a procedural violation; and (2) sufficient harm from this purported violation.  Though the Court finds that Plaintiffs have proven neither prong, the Court will address both issues.

       a.  <u>Procedural Violation</u>

IDEA requires school districts to develop an IEP for each child with a disability and to give parents "a significant role" in that process.  *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007) ("Parents serve as members of the team that develops the IEP.").  Therefore, the team must consider a parent's concerns "for enhancing the education of their child" and keep the parents adequately informed.  *Id.*; *see*, *e.g.*, 20 U.S.C. § 1414(d)(4)(A) (requiring the IEP Team to revise the IEP when appropriate to address certain information provided by the parents); § 1414(e) (requiring States to "ensure that the parents of [a child with a disability] are members of any group that makes decisions on the educational placement of their child").  The statute also provides general procedural safeguards that promote the informed involvement of parents

and guardians.  *See*, *e.g*., § 1415(a) (requiring States to "establish and maintain

procedures [. . .] to ensure that children with disabilities and their parents are guaranteed

procedural safeguards with respect to the provision of a free appropriate public

education"); § 1415(b)(1) (mandating that States provide an opportunity for parents to

examine all relevant records).

      Here, Defendant offered general information regarding the reading program;

however, Defendant did not provide all information regarding specific qualifications and

methodologies requested by the parents.  While parents must be afforded the opportunity

to meaningfully participate in the IEP process, Plaintiffs fail to show that the actions at

issue amount to a violation of any specific provisions or safeguards.  Accordingly, the

Court does not disagree with the administrative finding of no procedural violation.

      b. Harm from Alleged Violation

      Even if the Court had found a procedural violation, a procedural violation is

"actionable under the IDEA only if it results in a loss of educational opportunity for the

student, seriously deprives parents of their participation rights, or causes a deprivation of

educational benefits."  *Bayonne Bd. of Educ.*, 602 F.3d at 565 (citations omitted).  Thus,

"though it is important that a school district comply with the IDEA's procedural

requirements, rather than being a goal in itself, such compliance primarily is significant

because of the requirements' impact on students' and parents' substantive rights."  *Id*.

      "[A]t a minimum, '[t]he IEP must be reasonably calculated to enable the child to

receive meaningful educational benefits in light of the student's intellectual potential.'"

*Chambers v. Philadelphia Bd. of Educ.,* 587 F.3d 176, 182 (3d Cir. 2009) (citations

omitted).  However, the school district "is not required to provide the *best* possible

education to maximize educational benefits." *Greenwood v. Wissahickon Sch. Dist.*, 571 F. Supp. 2d 654, 663 (E.D. Pa. 2008), *aff'd sub nom. A.G. ex rel. S.G. v. Wissahickon Sch. Dist.*, 374 F. App'x 330 (3d Cir. 2010).  Accordingly, parents do not have a right to compel the school district to provide a "specific program or employ a specific methodology in educating a student." *Id.*; *see Rowley,* 458 U.S. at 199 (a free, appropriate public education does not require "the furnishing of every special service necessary to maximize each handicapped child's potential").  Therefore, though the IEP must provide a "basic floor of opportunity," the IEP need not provide an "optimal level of services." *See Holmes v. Millcreek Tp. School Dist.,* 205 F.3d 583, 590 (3d Cir. 2000).

Here, Defendant offered the Developmental Reading Program in W.C.D.'s IEP and provided some general information about the program.  Plaintiffs were not afforded complete access to all information regarding the program, specifically each teacher's qualifications and some of the more specific teaching methodologies.  However, Plaintiffs do not show that, in this specific instance, this lack of information would sufficiently restrict W.C.D.'s right to access educational benefits and opportunities or the parent's right to meaningfully participate.  *See, e.g., Greenwood*, 571 F. Supp. 2d at 663 (parents do not have the right to compel the provision of a "specific program or employ a specific methodology in educating a student").  Therefore, even if the denial violated a procedural right, Plaintiffs have shown insufficient harm as a result of Defendant's actions.  *See Winkelman ex rel. Winkelman*, 550 U.S. at 525–26.

CONCLUSION

For the reasons set forth above, the Court affirms the ruling of the Office of Administrative Law, grants Defendant's motion, and enters judgment in favor of Defendant.

*/s/ Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J

Dated: 2/24/14